Jessie D. SMITH, Appellant,

v.

The STATE of Texas, Appellee.

No. 42919.

Court of Criminal Appeals of Texas.

June 24, 1970.

Rehearing Denied Aug. 21, 1970.

Marks, Time & Aranson by Keith Marks, Sol Ballas, Dallas, for appellant.

Henry Wade, Dist. Atty., John B. Tolle, CaMille Elliott, Harry J. Schulz, Jr., and W. T. Westmoreland, Jr., Asst. Dist. Attys., Dallas, and Jim D. Vollers, State's Atty., Austin, for the State.

DOUGLAS, Judge.

OPINION

The conviction is for assault with intent to commit murder; the punishment, ten years.

The State's theory was that the motive for the assault was that appellant expected

to receive some twenty to thirty thousand dollars as the beneficiary of his wife's insurance policies which she had obtained through the company where she was employed.

Barbara Smith, the injured party, was the wife of the appellant at the time of the assault. She testified that the appellant struck her on the head with a small wrought iron table at least seven times, and as a result of her injuries she remained in the hospital for fifteen days. She testified that she believed the appellant when he told her that he was working for Ling Temco Vought and that he was training for some sort of secretive work in connection with a government job, and as a part of his equipment he bought a tear gas gun and brought it home. As a part of the training, he told her that he was to go to New York and had made arrangements for her to go with him at company expense; after the assault, she learned that appellant had not worked for, or trained at, Ling Temco Vought. On the day that they were supposed to leave for New York, the appellant came home and told her that he had bumped a curb with their car and wanted to repair it. She suggested that they go to the airport by other means for the 1:11 p.m. flight, but he told her to lie down and rest, and they would leave later. She lay down and went to sleep, to be awakened by appellant who was striking her on the head with the table, and at that time she smelled some strange odor (presumably tear gas).

Barbara Smith also testified that on an earlier occasion when appellant was driving her home from her work at Texas Instruments he gave her an orange drink which was too sweet, and after she asked him to taste it, he dropped it out of the car without doing so. Shortly thereafter, she became very ill and had to go to the hospital because her stomach hurt.

Dr. Charles Wilson, a neurosurgeon, testified that he examined Barbara Smith and that she had approximately ten lacerations or cuts in the scalp that went to the bone, and she had multiple linear fractures of the skull. In his opinion she probably would have died had she not received medical attention for her injuries.

Appellant testified that he did not make the assault, did not know what happened to his wife and did not tell her that he was employed by "LTV," and that he left the house the morning after he had bumped the curb with his car and did not return until approximately 7:30 or 8:00 p.m. and found his wife on the floor, and he picked her up and put her on the bed in the presence of her mother and sister.

The record reflects that Barbara Smith's mother and sister attempted to call her by telephone several times that day but could not do so because the line was always busy. They went to the house at approximately 7:30 or 8:00 p.m. and found Barbara moaning and lying on the bed with both dried and fresh blood around her, and the appellant was in another room with his shoes off and acted as if he knew nothing had happened. While they were there her sister tried to make a call but could not do so until appellant took something out of his pocket and inserted it into the telephone. The mother and sister both testified that appellant did not usually call, but he had called them several times during the day to tell them how happy Barbara was because she was going to New York.

In the first and third grounds of error, complaint is made because of two statements made by the prosecutor in his closing argument at the penalty stage of the trial, which are as follows:

" * * * What is probation? Probation is a slap on the wrist, go and sin no more. You get one free in Dallas County, that is what you tell this man with probation. Go on out there and try to kill your wife and if you fail we give you probation, we put you right back out on the street and what do you have to do on probation, well, you get to do what all the folks in Dallas County have been doing, obey the law. He wants to give

him one free shot at killing his wife. * * *"

and,

"Now, punishment is two-fold, to deter others and to punish this defendan*d* and rehabilitate this defendant, if you can, so give him time to rehabilitate if they can so that when and if he comes back to Dallas County he will know that the citizens of Dallas County mean business; that the citizens of Dallas County are not going to have men like him roaming the streets and getting one free attempt to murder their wives, to discharge a tear gas gun out there to get her helpless and then beat *hear,* if you please, to a bloody pulp out there in her home."

No objection was made to any part of the argument. In the absence of objections, the complaints are not properly before us for review. Lenzi v. State, Tex.Cr.App., 456 S.W.2d 99. Further, neither would present reversible error if objections had been made. The first and third grounds of error are overruled.

■ In the second ground of error, complaint is made that reversible error was committed at the guilt stage of the trial when the prosecutor asked appellant on re-cross-examination, "Jessie, are you setting up a Sam Sheppard defense, is that what you are doing?" An objection to the question was sustained, a motion for mistrial was overruled, and the court instructed the jury not to consider it for any purpose.

The question should not have been asked, but it presents no reversible error. In White v. State, 444 S.W.2d 921, this Court held:

"An error in asking an improper question or in admitting improper testimony may be generally cured or rendered harmless by a withdrawal of such testimony and an instruction to disregard the same except in extreme cases where it appears that the question or evidence is clearly calculated to inflame the minds of the jury and is of such character as to sug-

gest the impossibility of withdrawing the impression produced on their minds. Wheeler v. State, Tex.Cr.App., 413 S.W. 2d 705, 707; 5 Tex.Jur.2d, Sec. 437; McCormick and Ray, Texas Law of Evidence, Vol. 1, Sec. 29."

The second ground of error is overruled.

The judgment is affirmed.